Jairo Correa **LOPEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–90–00031–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 30, 1992.

Gilbert Villarreal, Houston, for appellant.

John B. Holmes, Dist. Atty., Kimberly Aperauch Stelter, Houston, for appellee.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

OPINION

TREVATHAN, Chief Justice.

This is an appeal from a conviction of delivery of a controlled substance. A jury found appellant, Jairo Correa Lopez, guilty and assessed punishment at 15–years confinement and a fine of $5,000. In six points of error, Lopez complains of the trial court's failure to compel disclosure of an informant's identity and challenges the sufficiency of the evidence. We reverse.

1. Factual background

Officer Fernando Villasana, an undercover narcotics officer with the Houston Police Department, was approached by an informant about a drug transaction involving four kilos of cocaine. The informant introduced Officer Villasana to Fransico Ponce one week before the date of the offense. At this initial meeting, Officer Villasana and Ponce discussed setting up a drug deal and agreed that Ponce would contact Officer Villasana at a later date once the arrangements had been made. Ponce, through the informant, contacted Officer Villasana one week later and a meeting was set up in a parking lot in the southeast part of Houston. Officer Villasana was to bring $92,000 in exchange for four kilos of cocaine.

Officer Villasana and his partner went to the parking lot at the agreed date and time, and met Ponce and the informant, who were already at the parking lot and together in a parked car. Officer Villasana approached the car and talked with Ponce, who directed him to another parked car where Lopez and Elkin Pulgarin were waiting to negotiate the drug deal. Officer Villasana then approached the car where Lopez and Pulgarin were waiting and introduced himself as a friend of Ponce. Pulgarin told Officer Villasana that Lopez had the contact or "source" for the cocaine and

that once they saw the money the deal could be completed. Lopez then walked over to Officer Villasana's car where his partner was waiting and was shown the money. Lopez then walked back and told Officer Villasana and Pulgarin that "everything looked good." Lopez and Pulgarin then instructed Officer Villasana to get back in his car and follow them to the "source" where the cocaine was being held.

Officer Villasana and his partner followed Lopez and Pulgarin to a house on Woodkerr Street where the cocaine was located. Because of the amount of cocaine and money involved, the "source" insisted that the actual exchange take place at this location. Once Officer Villasana and his partner arrived at the location, Lopez and Pulgarin got out of their car and met with Saul Gavira. After talking a few minutes, Gavira went into the house and returned with a brown paper bag. Gavira handed the bag to Lopez, who then brought the bag to Officer Villasana's partner on the passenger side of the officer's car. Pulgarin went to the driver's side to get the money from Officer Villasana. After confirming that Lopez had two kilos of cocaine,[1] Officer Villasana gave the "bust" signal and the raid team came in and arrested Lopez, Pulgarin, Gavira, Officer Villasana, and his partner.

Officer Villasana testified that Ponce and informant were already at the house on Woodkerr when he and his partner arrived. He testified that they were parked a block to a block and a half away and were facing away from the house itself. Ponce was later arrested at this location. Officer Villasana also testified that his only contact with the informant was at the initial meeting with Ponce and that he did not have any contact with the informant at the parking lot, nor at the delivery site on Woodkerr.

2. Disclosure of informant's identity

In his first four points of error, Lopez asserts the trial court committed reversible

1. Villasana originally arranged to purchase four kilos of cocaine; however, Pulgarin told him

that the source only had two kilos left.

error by denying his requests for discovery of the identity of the State's informant. Lopez filed a pretrial trial motion requesting the trial court to instruct the State to disclose the informant's identity. The trial court conducted a pretrial in camera hearing and denied Lopez's motion. Lopez also made three separate requests during the trial before the jury requesting the trial court to instruct the State to disclose the identity of the informant. Again, each of these requests were denied.

In *Bodin v. State*, 807 S.W.2d 313, 317 (Tex.Crim.App.1991), the Court of Criminal Appeals reviewed the law relating to the informer identity privilege. The court pointed out that before the enactment of rule 508 of the Texas ·Rules of Criminal Evidence, it was well settled that disclosure was not required unless the informant: (1) participated in the offense; or (2) was present at the time of the offense or arrest; or (3) was otherwise shown to be a material witness to the transaction or on whether the defendant knowingly committed the offense charged. *Rodriguez v. State*, 614 S.W.2d 448, 449 (Tex.Crim.App. [Panel Op.] 1981); *Bernard v. State*, 566 S.W.2d 575, 577 (Tex.Crim.App. [Panel Op.] 1978).

■ Rule 508 allows the State to invoke a privilege and refuse to disclose an informant's identity. TEX.R.CRIM.EVID. 508(a). There are three exceptions to this rule. The exception at issue here is rule 508(c)(2), which was in effect when Lopez's case was tried. It allows a defendant to request the disclosure of a informer's identity if it appears from the evidence in the case, or from a showing by the defendant, that the informant may be able to give testimony *necessary to a fair determination of the defendant's guilt or innocence.* *Bodin*, 807 S.W.2d at 317; TEX.R.CRIM.EVID. 508(c)(2). The court in *Bodin* held that, because the provisions of rule 508 are broader than those under prior case law, the exception to the informer identity privilege set out in rule 508(c)(2) is not restricted to the three categories listed above. *Bodin*, 807 S.W.2d at 318.

■ The defendant has the threshold burden of demonstrating that the identity must be disclosed. *Bodin*, 807 S.W.2d at 318. The defendant is only required to make a plausible showing of how the informant's information may be important. *Id.* Evidence from any source, but not mere conjecture or speculation, must be presented to make the required showing that the informant's identity must be disclosed. *Id.*

■ Lopez argues the trial court should have ordered the State to disclose the informant's identity because Officer Villasana's testimony at the hearing, and later at the trial before the jury, established the informant was present during the initial meeting setting up the transfer of the cocaine and was present at the time of the offense and arrest. We agree.

Lopez was only required to make a plausible showing that the informer could give testimony necessary to a fair determination of his guilt or innocence. *Bodin*, 807 S.W.2d at 318; TEX.R.CRIM.EVID. 508(c)(2). Lopez made such a plausible showing by Officer Villasana's testimony that the informant was present when the delivery of the drugs was made. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App.1991). This showing meets the provisions of rule 508 and also meets the exceptions that are well established by case law. *Id.* When it is shown that the informant was an eyewitness to an alleged offense, then certainly that informant can in fact give testimony "necessary to a fair determination of the issues of guilt or innocence." *Id.* Thus, the trial court erred by not instructing the State to disclose the identity of the informant. We must next determine whether such error was harmless.

3. Harm analysis

Rule 81(b)(2) of the Texas Rules of Appellate procedure provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2). Whether error is harmless is not determined simply by examining whether there exists overwhelming evidence to support the verdict of guilt. *Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989). Rather, the focus is on the probable impact of the error on the jury in light of the existence of other evidence. *Harris,* 790 S.W.2d at 588. We must first isolate the error and all its effects and then ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* at 588.

▓ In *Anderson,* the Court of Criminal Appeals held the trial court's failure to instruct the State to disclose the identity of an informant was not harmless error. The instant case is not distinguishable. In *Anderson,* the court reasoned that because the primary defensive theory was the possibility of mistaken identity, the failure to disclose the informant's identity deprived the defendant of an unknown potentially exculpatory witness because the informant was the only other person who witnessed the transaction. *See Anderson,* 817 S.W.2d at 73.

Here, it is undisputed that Lopez committed the offense. However, Lopez argues the informant's identity was required to properly establish his defensive theory of entrapment. Lopez contends that he was unreasonably induced to commit the offense by Ponce, Gavira, and a person named Tomas Rodriguez. Lopez testified that each made inducements of money[2] and security for assisting in the commission of the offense. Lopez argues that if the informant had testified at trial, the informant would have corroborated his testimony about the amount of inducement he was faced with. Lopez further argues the only way to tie one of these individuals to Officer Villasana and establish entrapment was for the State to disclose the identity of the informant.

Lopez filed a pretrial motion raising the issue of entrapment. The trial court conducted a hearing pursuant to article 28.01, § 1(9) of the Code of Criminal Procedure and denied Lopez's motion. TEX.CODE CRIM.

P.ANN. art. 28.01 (Vernon 1989). The trial court, as the trier of fact, was authorized to overrule the motion. *Cook v. State,* 646 S.W.2d 952, 952 (Tex.Crim.App.1983). At the trial before the jury, Lopez requested a jury charge on the issue of entrapment, which the trial court granted.

In reviewing the record, it was apparent that the jury could determine that Rodriguez was in fact the confidential informant. The record reflects the following evidence was before the jury with respect to the informant's and Rodriguez's participation in the transaction:

Officer Villasana testified as follows:

a. When the officers arrived at the parking lot, the informant and Ponce were already present waiting in a parked car.

b. When the officers arrived at the parking lot, Officer Villasana got out of his car and approached the car where Ponce and the informant were waiting. The informant got out of his car and met Officer Villasana in the lot between the two cars. The informant pointed out Ponce in the car and the two shook hands and parted.

c. When the officers arrived at the delivery site on Woodkerr, Ponce and the informant were already there parked a block to a block and a half from the house.

Officer Villasana's partner testified as follows:

a. When the officers arrived at the delivery site on Woodkerr, the car Ponce and the informant were in was identified as a blue Mustang.

Lopez testified as follows:

a. Lopez identified the person who accompanied Ponce throughout the transaction as Tomas Rodriguez.

b. Lopez identified the car that Ponce and Rodriguez were waiting in at the parking lot was a blue Mustang.

c. When the officers arrived at the parking lot, Rodriguez got out of the blue Mustang and met Officer Villasana in the lot between the two cars.

**2.** Lopez was to receive $1,500 as payment for his involvement in the drug transaction.

d. Ponce and Rodriguez were parked in the blue Mustang up the street from where the house was located.

In summary, taking the testimony detailed above, the jury could probably have deduced that Rodriguez was the informant, without the State having to disclose the name of the informant; however, in *Bodin*, the court clearly held that if the facts demand disclosure, the accused should not be required to speculate as to the informant's identity. *Bodin*, 807 S.W.2d at 319.

When the evidence is conflicting with respect to the issue of entrapment, it should be submitted to the jury. *Melton v. State*, 713 S.W.2d 107, 113 (Tex.Crim.App. 1986). The jury was given the following charge with respect to the issue of entrapment:

It is a defense to prosecution that the defendant engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

The "Law Enforcement Agent" includes personnel of the State and local law enforcement agencies as well as of the United States and any person acting in accordance with instruction from such agents.

Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense charged, but you further believe, or have a reasonable doubt thereof, that the defendant was induced to do so by a law enforcement agent by persuasion or any other means likely to cause persons to do so, and that the conduct of the law enforcement agent did not merely afford the defendant an opportunity to commit the offense, if any, your will the defendant no guilty.

The error by the trial court in failing to instruct the State to disclose the identity of the informant did affect the jury's ability to review the evidence before it. The jury sent the following note during deliberations:

If a law enforcement agent goes through an informant who uses persuasion or who in turn gets another person to use persuasion, would that be an example of other means likely to cause persons to commit an offense? Signed, Foreman.

Obviously, the exact conduct of the particular informer was in issue. Thus, in light of the evidence presented with respect to the identity of the informant, the nature of the entrapment defense, and the jury question, we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2).

Appellant's first four points of error are sustained.

### 4. Sufficiency of the evidence

In his fifth point of error, Lopez asserts the evidence was legally insufficient to support his conviction. Lopez contends that having raised the issue of entrapment, the State then had the burden to disprove this defense beyond a reasonable doubt. *Sebesta v. State*, 783 S.W.2d 811, 814 (Tex.Crim. App.1986). Thus, Lopez argues there is insufficient evidence to support the conviction because a rational trier of fact could not have concluded, beyond a reasonable doubt, that the State rebutted his defense of entrapment.

In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The entire body of evidence is reviewed to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime, and not just a plausible explanation of the crime. *Butler*, 769 S.W.2d at 239.

The issue on appeal is not whether we believe the prosecutor's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667

S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Glass v. State*, 761 S.W.2d 806 (Tex.App.—Houston [1st Dist.] 1988, no pet.). If there is evidence that establishes guilt, beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Id.; Glass*, 761 S.W.2d at 807.

The jury, as the trier of fact, is the sole judge of the credibility of witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp*, 707 S.W.2d at 614; *Smith v. State*, 789 S.W.2d 419, 420 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ An entrapment defense is available where the criminal design originates in the mind of the government officials or their agent, and they induce the defendant to commit a crime the defendant would not otherwise commit. *Richardson v. State*, 622 S.W.2d 852, 854 (Tex.Crim.App.1981). The test for entrapment is objective and requires a preliminary determination of inducement. *Rodriguez v. State*, 662 S.W.2d 352, 355 (Tex.Crim.App.1984). Once the trier of fact determines that an inducement occurred, it must then focus only on the nature of the state agent's activity, without regard to the predisposition of the particular defendant. *Rodriguez*, 662 S.W.2d at 355. Under the objective test for entrapment, prohibited police conduct includes offers of inordinate sums of money and other methods of persuasion that are likely to cause a person to commit an offense. *Ramos v. State*, 632 S.W.2d 688, 691 (Tex. App.—Amarillo 1982, no pet.). The issue is the effect the agent's inducement would likely have upon persons in general. *Donnell v. State*, 677 S.W.2d 199, 200–201 (Tex. App.—Houston [1st Dist.] 1984, no pet.). An amount that merely affords a person an opportunity to commit an offense does not

constitute entrapment. Tex.Penal Code Ann. § 8.06(a) (Vernon 1974).

■ Lopez asserts that he was induced to commit the offense by Gavira, Ponce, and Rodriguez. Lopez testified that each made inducements of money and security for his participation in the transaction. Gavira was already incarcerated for his participation in the offense. Evidence indicated that Ponce was not the informant. Ponce initiated the conversations with Lopez about the cocaine. He told Lopez he would get paid $1,500; that he knew Rodriguez; that Rodriguez would not "defraud" him; and there would be "no problems." Rodriguez told Lopez that he would get paid and promised him that there would be "no problems." There were no threats made, no promises of inordinate sums of money, and there were no special pleas or appeals to friendship. A rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler*, 769 S.W.2d at 239.

Appellant's fifth point of error is overruled.

■ In his sixth point of error, Lopez asserts the evidence was factually insufficient to support his conviction, where he presented credible evidence of an entrapment defense. Lopez asks this Court to apply the reasoning of *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990). We decline.

The *Meraz* court held that a defendant may seek a factual review relevant to an affirmative defense. *Id.* at 153.

[W]hen the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant had the burden of proof by a preponderance of evidence, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust.

*Id.* at 154–55. The *Meraz* court dealt with the affirmative defense of insanity and the defendant's competency to stand trial. *Id.* at 147.

 Here, we are faced with the issue of entrapment. By definition, entrapment is not an affirmative defense. TEX.PENAL CODE ANN. § 8.06 (Vernon 1974).[3] In addition, with entrapment, the ultimate burden is on the State. *See Sebesta,* 783 S.W.2d at 814 (if evidence of entrapment is admitted, the State must disprove entrapment beyond a reasonable doubt).

Our resolution of appellant's fifth point of error is dispositive of his sufficiency of the evidence challenge.

Point of error six is overruled.

The judgment is reversed, and the cause is remanded.

---

**3.** Insanity, duress, and, in a limited form, mistake of law, are all defined as affirmative de-
fenses as defined by the Texas Penal Code, sections 8.01, 8.05, and 8.03, respectively.