Victor Hugo QUINONEZ–SAA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00976–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 1993.

Discretionary Review Refused Oct. 20, 1993.

Ken Goode, Houston, for appellant.

John B. Holmes, Scott Durfee, Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Victor Hugo Quinonez–Saa, guilty of murder and assessed punishment at 75–years confinement and a fine of $10,000.

■ The evidence showed that the deceased had been shot at close range in the head with a .38 caliber bullet. In his first point of error, appellant asserts that the admission into evidence of autopsy photographs was reversible error because the medical examiner who testified had not performed the autopsy or viewed the body of the deceased.

The State offered into evidence a report, numbered 915231, on an autopsy that had been conducted on the deceased by Dr. Auerlio Espinola, an assistant medical examiner. The report was sponsored, without objection from appellant, by Dr. Eduardo Bellas, another assistant medical examiner. The State then offered into evidence three autopsy photographs that also bore the number 915231. Appellant objected on the grounds that the testifying doctor had not seen the body or done the autopsy, and the autopsy report made no reference to photographs having been taken. The trial court overruled appellant's objection and admitted the photographs into evidence. Appellant contends that admission of these photographs into evidence constitutes reversible error.

Appellant cites *Goss v. State*, 549 S.W.2d 404 (Tex.Crim.App.1978), as authority for his contention. In *Goss*, the Court of Criminal Appeals held that the admission into evidence of autopsy photographs was reversible error when the medical examiner who testified had not performed the autopsy or even viewed the body of the deceased, but merely stated the pictures were consistent with the autopsy report, which made no mention that

the photographs were taken during the autopsy. The Court stated: "The fact that certain factors depicted in the photographs were consistent with the autopsy report, *standing alone*, would not render the photographs admissible. The admissibility of a photograph is conditioned on its identification by a witness or person of knowledge that the photograph is a correct representation of such facts." *Goss*, 549 S.W.2d at 406 (emphasis added). Furthermore, the court found that the record was "devoid of proof" that would render the photographs admissible under the then existing business records act. *Id.*

It is true that the instant case is similar to *Goss*. The autopsy report and pictures were prepared by Dr. Espinola, who was not present at trial, rather than by Dr. Bellas, the sponsoring witness. Similar to the testifying medical examiner in *Goss*, Dr. Bellas did not testify that the autopsy photographs were a true and accurate depiction of the body at the time of the autopsy. However, there are two factors that distinguish *Goss* from the present case and support the trial court's admission of the photographs into evidence: (1) the corroborative predicate evidence in the instant case is greater than the simple correlation between the autopsy report and the photographs in *Goss;* and (2) the record in the instant case is not "devoid of proof," as was the case in *Goss*, that the photographs are admissible under the current business records exception of Tex.R.Crim.Evid. 803(6).

 Before being admitted into evidence, photographs must ordinarily be shown to be a correct representation of the subject at a given time. *Huffman v. State*, 746 S.W.2d 212, 222 (Tex.Crim.App.1988). However, the only identification or authentication required is that the offered evidence properly represent the person, object, or scene in question. This may be testified to not only by the photographer, but by any other witness who knows the facts, even though the witness did not take the photograph himself or see it taken. *Id.* at 222. A trial judge is to be accorded considerable discretion in ruling on the admission or exclusion of photographic evidence. *Id.*

We note that in *Goss*, the Court held that the consistency between the autopsy report and the photographs, "*standing alone*," was not enough to render the photographs admissible. *Goss*, 549 S.W.2d at 406 (emphasis added). In *Goss*, the deceased died of severe burns suffered in a car accident; the photographs were of a charred and burned body. In the present case, the deceased died of a single, small caliber, gunshot wound to the head. The only difference between the autopsy photographs and the other photographs of the deceased's head in the record, is that the blood was washed from the deceased's face in the autopsy pictures, allowing a clearer view of the wound. The photographs at the scene and at the morgue, which were properly authenticated and not objected to at trial, provide additional evidence of the fairness and accuracy of the autopsy photographs in the instant case.

Dr. Bellas testified that the business records pertaining to the autopsy of the deceased included "any photographs that would have been taken during that autopsy report" and that these records were "entered by a person who has knowledge at or near the time that the events occurred." He also testified that the records were kept under his care, custody and control and were kept as a normal course of business with the medical examiner's office. Therefore the photographs were admissible under Texas Rule of Criminal Evidence 803(6) as part of the record of the autopsy.

The photographs in *Goss* were not admissible under the then existing business records act because the record was "devoid of proof" satisfying the business records exception as it then existed. *Goss*, 549 S.W.2d at 406. The State in that case never established that the photographs were part of the business records created by the autopsy examination; the record established only that the photographs were consistent with the autopsy report, without establishing that the photographs were taken as part of the record generated from the autopsy. *Id.* at 405. In the instant case, the testimony adduced at trial was sufficient to show that the photographs were, like the written autopsy report, entered by a person with knowledge and

kept as a normal course of business with the medical examiner's office.

Appellant relies on the authority of *Cole v. State*, 839 S.W.2d 798 (Tex.Crim.App.1992), to assert that the photographs would be inadmissible under TEX.R.CRIM.EVID. 803(6) because evidence which is inadmissible under the public records exception of TEX.R.CRIM. EVID. 803(8) cannot be "back-doored" through the business record exception. The issue in *Cole* was whether the trial court erred in admitting hearsay evidence concerning the results of a chemical test performed by an absent department of public safety chemist pursuant to TEX.R.CRIM.EVID. 803(6). Cole contended the admission of the testimony was prohibited by the portion of rule 803 that prohibits as hearsay "matters observed by police officers and other law enforcement personnel." TEX.R.CRIM.EVID. 803(8)(B). The Court of Criminal Appeals, relying on *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977), found that chemists employed by the Texas Department of Public Safety are "law enforcement personnel" within the meaning of rule 803(8)(B). The Court reversed Cole's conviction, holding:

> [T]he absent chemist's reports in this case were matters observed by law enforcement personnel and were therefore inadmissible as an exception to the hearsay rule under TRCE 803(8)(B). We further hold TRCE 806(6) should not have served as an alternative route for admissibility of these particular records otherwise barred by TRCE 803(8).

*Cole*, 839 S.W.2d at 806.

*Cole* is distinguishable from the present case. It dealt with the admissibility of the test results of a non-testifying chemist employed by the Texas Department of Public Safety, rather than the records of a county medical examiner. The Texas Court of Criminal Appeals has yet to decide whether county medical examiners are considered to be "law enforcement personnel" pursuant to TEX.R.CRIM.EVID. 803(8)(B). However, this Court has determined that they are not, and therefore the records of a county medical

examiner can be admissible under both TEX. R.CRIM.EVID. 803(6) as a business record and TEX.R.CRIM.EVID. 803(8) as a public record. *Sandles v. State*, 857 S.W.2d 932 (Tex.App.— Houston [1st Dist.] June 24, 1993, n.p.h.). *See also Vasquez v. State*, 814 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

■ However, even if *Cole's* analysis does apply, and the autopsy photographs in the present case are inadmissible under the Texas Rules of Criminal Evidence, the error, if any, from the admission of the autopsy photographs was harmless under TEX.R.APP.P. 81(b)(2). Appellant claims that the photographs showed evidence of "stippling" surrounding the gunshot wound, thus establishing the close range of the gunshot wound to the complainant's head. These photographs, however, were not the only evidence which established this fact. The autopsy report, which was admitted without objection into evidence, and is not complained about on appeal, stated that there was "dense deposition of gunpowder stippling scattered over a diameter of 2 inches" on the skin surrounding the wound. The medical examiner concluded the deceased suffered a close range gunshot wound. The photographs were, at the most, cumulative of the other evidence adduced at trial. We conclude, beyond a reasonable doubt, that any error in admitting the photographs into evidence did not make any contribution to the conviction or punishment. TEX.R.APP.P. 81(b)(2).[1]

We overrule appellant's first point of error.

■ In his second point of error, appellant asserts the trial court erred in not requiring disclosure of a confidential informant's identity. Appellant contends that discovery of the informant's identity could have led to the identity of an eyewitness to the killing.

Appellant filed a pre-trial motion seeking to discover the identity of a confidential informant. After a pretrial hearing conducted immediately before the start of trial, the trial court granted appellant's motion for the State to provide appellant with the name and

---

1. We note that appellant does not assert the photographs were inadmissible because they are highly inflammatory and their probative value is small. The unobjected to photographs of the deceased taken at the scene of the shooting arguably have a greater inflammatory potential.

address of the informant. Above the Judge's signature on the order is the statement, "State does not know the name." At the pretrial hearing, the prosecutor had stated he did not have the informant's name.

At trial later on the same day, during direct examination, Sergeant Escalante testified that he had spoken with the confidential informant. A portion of appellant's cross-examination of Escalante follows:

APPELLANT: Have you ever investigated that person that you described as a confidential informant—have you ever investigated where that person was that night?

ESCALANTE: No sir. I think the apartment was locked up, if I'm not mistaken. She's in custody in Harris County.

APPELLANT: Are you willing to tell us the name of that person?

THE STATE: Your Honor, I would object at this point unless he can establish that person was a material witness to the guilt or innocence or any issue on guilt or innocence. Then the identity will not have to be disclosed under the law.

THE COURT: To your own information your investigation was this—was the C.I. a material witness:

ESCALANTE: No sir.

THE COURT: In any way?

ESCALANTE: No sir.

THE COURT: And your investigation proved this to be true, is that correct?

ESCALANTE: That's correct.

THE COURT: That will be overruled.

APPELLANT: Thank you, Judge.

APPELLANT: Well, without giving us the name of this person—

THE STATE: I'm sorry, Judge. You said—I had made the objection, and you said it would be overruled, and I—

THE COURT: He wanted to get it in.

THE STATE: Okay.

THE COURT: You may proceed.

APPELLANT: Thank you, Judge.

APPELLANT: Without giving us the name of this person, did you even determine—are you sure where that person was the night of August the 5th?

ESCALANTE: She was not with the complainant or anything like that.

APPELLANT: How did you determine that?

ESCALANTE: Because she told me that.

APPELLANT: Well, other than taking that person's word for the fact they weren't with the deceased when the deceased was killed, is there any other evidence that person was not there?

ESCALANTE: No, sir.

■ The State argues that appellant did not preserve error because he never asked the trial court to compel Escalante to reveal the name of the informant, he merely asked whether Escalante would be willing to give the name. The State contends that the trial court answered the State's objection with an ambiguous ruling, and appellant did not pursue his objection until an adverse ruling was received according to *Cook v. State*, 741 S.W.2d 928, 939 (Tex.Crim.App.1987).

Even though appellant never specifically asked the trial court to order Escalante to reveal the identity of the informant, it is apparent from the record that such revelation was appellant's desire and what the State sought to prevent. Pursuant to *Anderson v. State*, 817 S.W.2d 69, 71, n. 4 (Tex.Crim.App.1991), appellant preserved error for appellate review.

■ Rule 508 of the Texas Rules of Criminal Evidence allows the State to invoke a privilege and refuse to disclose an informant's identity. *Lopez v. State*, 824 S.W.2d 298, 300 (Tex.App.—Houston [1st Dist.] 1992, no pet.); Tex.R.Crim.Evid. 508(a). There are three exceptions to this rule, and the exception at issue here is rule 508(c)(2). Rule 508(c)(2) allows a defendant to obtain the disclosure of an informant's identity if it appears from the evidence in the case, or from a showing by the defendant, that the informant may be able to give testimony *necessary to a fair determination of the defendant's guilt or innocence*. *Anderson*, 817 S.W.2d at 71; *Bodin v. State*, 807 S.W.2d 313, 317 (Tex.Crim.App.1991); *Lopez*, 824 S.W.2d at 300; Tex.R.Crim.Evid. 508(c)(2).

The defendant has the threshold burden of demonstrating that the identity of the informant must be disclosed. *Anderson,* 817 S.W.2d at 72; *Bodin,* 807 S.W.2d at 318; *Lopez,* 824 S.W.2d at 300. The defendant is only required to make a plausible showing of how the informant's information may be important. *Id.* Evidence from any source, but not mere conjecture or speculation, must be presented to make the required showing that the informant's identity must be disclosed.

During the pretrial hearing, the State indicated there was a third party eyewitness to the killing, and the confidential informant knew the name of the eyewitness. Appellant argues he was entitled to the name of the informant, so he could find out the name of the eyewitness. However, appellant did not show that he could not find out the identity of the eyewitness through other means, such as by directly asking the State or its witnesses for the identity of any eyewitness. Appellant did not ask Sergeant Escalante or any other witness, for the identity of the alleged eyewitness. Appellant did not meet his threshold burden of demonstrating that the identity of the informant had to be disclosed in order for appellant to find out the identity of the eyewitness.

We overrule appellant's second point of error.

In his third point of error, appellant asserts that the trial court committed reversible error by permitting appellant's wife to testify as to confidential statements made to her by appellant.

Outside the presence of the jury, the State proffered testimony by appellant's wife, Elizabeth Campbell, that appellant admitted shooting the complainant in the head and changing clothes afterwards. Appellant objected, arguing that according to TEX.R.CRIM. EVID. 504(1), the statements were inadmissible because they were confidential communications made to his spouse. The State replied that appellant waived any privilege because the statements were discussed in the presence of a third party, Mr. Henry Valencia. The court overruled appellant's objection and permitted the introduction of the statements.

Campbell testified that she met appellant on February 27, 1990. Appellant and Campbell began living together in December of 1990. Two or three weeks after the murder, appellant told Campbell that he shot the decedent in the head and changed clothes afterwards. Campbell testified that appellant made these statements *before* they were married on August 26, 1991. Neither the State nor appellant asked Campbell if Valencia was present when appellant made the statements.

In order to perfect the record, the State offered the testimony of Valencia outside the presence of the jury. Valencia testified that appellant told him that he shot the decedent in the head and changed clothes afterwards. Valencia, however, testified that the conversation took place the day after the murder and that appellant's wife was *not* present.

Appellant argues that the State erroneously argued that appellant had not intended his conversations to be confidential. Appellant points to Valencia's testimony that Campbell was not present when appellant made the statements. Although the State's argument at trial was incorrect, the trial court did not err in admitting Campbell's testimony because it was not privileged.

Rule 504(1) of the Texas Rules of Criminal Evidence provides:

(a) A communication is confidential if it is made privately by any person to his spouse and it is not intended for disclosure to any other person.

(b) A person, whether or not a party, ... has a privilege during their marriage and afterwards to ... prevent another from disclosing a confidential communication made to his spouse *while they were married.*

TEX.R.CRIM.EVID. 504(1) (emphasis added).

The evidence indicates that appellant and Campbell were not ceremonially married when the statements were made. Appellant married Campbell *after* he made the statements. Therefore, appellant had to prove a common-law marriage existed in order to assert the marital privilege. In order to prove the existence of a common-law marriage, one must prove: 1) the parties entered

into an express or implied agreement to become husband and wife; 2) they cohabitated pursuant to the agreement; and 3) they held themselves out to the general public as husband and wife. *Tompkins v. State,* 774 S.W.2d 195, 208 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

■ Appellant did not prove Campbell was his common-law wife. Appellant's testimony that he and Campbell were cohabitating at the time of the statement is not sufficient to establish a common-law marriage. *Tompkins,* 774 S.W.2d at 209. Nor was Sergeant Escalante's testimony that as far as he knew, Campbell was appellant's "girlfriend, common-law wife." Testimony of a witness that merely constitutes a conclusion that a common-law marriage exists is not sufficient, standing alone, to establish a common-law marriage. *Id.*

■ Additionally, appellant contends that he does not need to prove the existence of a common-law marriage, because the State did not controvert the existence of his marriage at trial. The State, however, did not have to controvert the existence of appellant's marriage. The existence of a common-law marriage is a fact question, with the burden of proof on the party seeking to establish the existence of the marriage. *Hightower v. State,* 629 S.W.2d 920, 924 (Tex.Crim.App. 1981).

We overrule appellant's third point of error.

We affirm the judgment.