MARRIOTT CORPORATION, Appellant,

v.

Richard N. AZAR and the City of El Paso, Appellees.

No. 08–84–00255–CV.

Court of Appeals of Texas, El Paso.

Sept. 4, 1985.

Rehearing Denied Oct. 16, 1985.

E. Link Beck, Joe Fry, Kemp, Smith, Duncan & Hammond, El Paso, for appellant.

Ronald J. Stading, Stading & Stading, David C. Caylor, City Atty., El Paso, for appellees.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is a declaratory judgment case in which Appellee Azar brought suit against Appellee City and Appellant Marriott intervened. The suit involves three parcels of land near the El Paso Airport and the surrounding agreements regarding the use of that land. After trial, the court below granted judgment in favor of Azar and entered findings of fact and conclusions of law. From this judgment Marriott appeals. The statement of facts is before us. We affirm.

The principal issue on this appeal concerns Article 9.19 of the Marriott/City Lease of October 17, 1980. Appellant contends the court's interpretation of this exclusive hotel rights provision was erroneous as a matter of law. Azar and the City respond that the trial court's legal determination was correct and should not be dis-

turbed. Alternatively, Appellant asserts the provision was ambiguous and the court erred in not considering parol evidence in determining the intention of the parties with regard to the article. In a third and final point, Appellant urges that the conclusion that Azar was entitled to construct additional hotels was not supported by the evidence.

As to the background, Lanward Corporation, at its expense, obtained a land use study (Study) concerning certain El Paso Airport land which we will refer to as Parcels one, two and three. In consideration of Lanward Corporation's obtaining the Study, the City of El Paso entered into the contract of April 11, 1978, whereby Lanward obtained the right to thereafter lease these three parcels.

The Study initially designated what its authors then thought to be the highest and best use for each of the parcels. Section II.E. of the Lanward/City contract of April 11, 1978, provided, however, that the City and Lanward "may at any time by mutual agreement amend the land uses established by the study for Parcels one, two and three." The original Study proposed only one hotel on Parcels one, two and three as of the time of the Study.

By the third amendment, dated November 13, 1979, to the contract of April 11, 1978, Lanward was authorized a second hotel on Parcels one and/or three after the first hotel would be completed.

The option to lease Parcel two and for the erection of the first motel/hotel thereon was assigned to Marriott by an agreement entered into between Lanward Development Corporation (assignee of Lanward Corporation), Richard N. Azar and Marriott on August 12, 1980. Marriott made no provision in that agreement precluding Lanward or Azar from seeking additional hotels/motels on Parcels one and three. This assignment to Marriott acknowledged the contract of April 11, 1978, as amended.

On October 17, 1980, the Marriott/City Lease was entered into. As stated, the dispute here concerns Article 9.19 of that

lease, the article entitled "Exclusive Hotel Rights." Neither Lanward Corporation, Lanward Development Corporation nor Azar were signatories to that lease. The Marriott Motel/Hotel was constructed and went into operation. The second motel/hotel, the Brock Residence Inn, was built and went into operation.

On February 7, 1984, the City, by resolution, granted Azar permission to construct additional hotels/motels on Parcel one. The permission was conditioned however, on Azar obtaining a court determination of whether the Marriott/City Lease of October 17, 1980, precluded the City from authorizing this specified use of Parcel one to Azar as lessee.

The trial court in its judgment of May 22, 1984, found no ambiguity in the various documents submitted to it and ordered that Azar be permitted to place hotels, motels or restaurants on Parcel one. It further recited that Azar may place anything on Parcel one contemplated by the 1978 Study subject to architectural approval. It also provided that any other or additional uses of Parcel one may be mutually agreed upon by Azar and the City. It further declared that Marriott had no legal basis to object to leasing arrangements between Azar and the City. Findings of fact and conclusions of law were entered on June 14, 1984.

We will summarize the trial court's findings of fact, in part, as follows:

1) On April 11, 1978, the City by contract gave Lanward Corporation an option to lease Parcels one, two and three. The contract incorporated the Land Use Study. The Study recommended one hotel on the three parcels and contemplated need for additional hotel rooms. The contract provided that the parcels could be used as stated in the Study and the uses could be modified at any time by mutual agreement.

2, 3) The contract was amended on several occasions allowing Lanward Corporation to construct a second hotel on Parcels one and/or three after completion of the first hotel. None of the amendments restricted the quantity of hotels on the parcels.

4) On August 12, 1980, Lanward Corporation assigned its rights under the April 11, 1978, contract with respect to Parcel two to Marriott. In this assignment Marriott did not limit the number of hotels Lanward or its successors could place on Parcels one and/or three. Marriott and the City executed the Marriott/City Lease on October 17, 1980. Marriott was aware at that time of the April 11, 1978, contract as amended.

5) The Marriott/City Lease is not susceptible of more than one meaning. There is no need to consider the intention of the parties or any testimony regarding same.

6) Article 9.19 of Marriott/City Lease entitled Exclusive Hotel Rights provides that Lessor City shall not use, subject, however, to Lessor's Contract of April 11, 1978, with the Lanward Corporation, as amended through the effective date, sell or lease or permit to be used for the operation of a motel, hotel or restaurant any of the property owned by it as described in the attached plat. That Lanward Corporation was specifically excepted from this provision. The limitation of use applied to any other lessee but excepted Lanward Corporation. That Article 9.19 is not susceptible of more than one meaning and there is no need to consider the intention of the parties or any testimony regarding same.

7) Omitted.

8, 9) The Lanward Corporation assigned its rights under the April 11, 1978, contract, as amended, to Lanward Development Corporation, and it in turn to Richard N. Azar. On May 1, 1982, Azar and the City executed a lease agreement regarding Parcels one and three. That the lease is not susceptible of more than one meaning and there is no need to consider the intention of the parties or any testimony regarding same. That this lease specifically permitted Lessee to place hotels, motels or restaurants or whatever the parties mutually agreed to on Parcels one and three.

10) That the April 11, 1978, lease option between the City and Lanward in its Section II.E. provides: "Notwithstanding the other provisions of the Contract, the City and Lanward may at any time by mutual agreement amend the land uses established by the Study for Parcels 1, 2 and 3."

11, 12, 13) That Azar's application to the City to construct a hotel on Parcel one was denied on August 3, 1983; that the City thereafter agreed by resolution of February 7, 1984, subject to a court determination that the Marriott/City Lease did not preclude the City from authorizing such use.

Based on these fact findings, the trial court, in regard to the exclusive hotel provision, concluded as a matter of law that:

The Court finds that the October 17, 1980 MARRIOTT–CITY Lease is not ambiguous as to Section 9.19 of the Lease. The parties specifically excepted Lanward Corporation (the predecessor of Plaintiff AZAR) out of the provision restricting the CITY's use of the other properties. Lessor bound itself not to lease Parcels 1 and/or 3 to anyone other than Lanward Corporation ... for use as a hotel, motel or restaurant. This section did not limit the CITY's authority to grant building of hotels, motels or restaurants as it related to Lanward Corporation.... This section of the MARRIOTT Lease did not effect [sic] Lanward Corporation's ... lease rights to place a hotel, motel or restaurant on Parcel 1.

■ We set out certain standards applicable to the review of a bench-tried case. The judgment of the trial court will not be set aside if there is any evidence of a probative value to support it. This Court may not substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972 (1951); *Liedeker v. Grossman,* 146 Tex. 308, 206 S.W.2d 232 (1947). Where substantial and probative evidence supports the trial court's findings

of fact, the findings are controlling and we may not disturb them even though there is conflicting evidence, or a preponderance of evidence to the contrary, or even though we might have reached a different conclusion based on the same evidence. *Stanford v. Dairy Queen Products of Texas,* 623 S.W.2d 797 (Tex.App.—Austin 1981, writ ref'd n.r.e.). Furthermore, where the case is tried to the court, a reviewing court will not disturb such findings if there is some evidence of probative force to support the same, viewing the evidence in the light most favorable to the prevailing party and indulging every legitimate conclusion that is favorable. *Gulf Coast Operators, Inc. v. Fleming Oil Co.,* 393 S.W.2d 954 (Tex. Civ.App.—Houston 1965, no writ); *Stedman v. Georgetown Savings and Loan Association,* 595 S.W.2d 486 (Tex.1979).

■ With these rules of appellate review in mind, we have examined Appellant's Point of Error No. One contending that the trial court erred in its interpretation of the exclusive hotel rights provision of the Marriott/City Lease of October 17, 1980. Marriott does not challenge the trial court's findings of fact. Such findings not challenged by points of error are conclusively established and are binding upon the parties and this Court. *Aldrich v. State ex rel. Cox,* 658 S.W.2d 323 (Tex.App.—Tyler 1983, no writ).

■ From those findings and the documentary evidence it appears that the City at no time placed restrictions upon itself to limit the number of hotels that would be placed upon Parcels one, two and three. The City had from the initial contract of April 11, 1978, reserved the right with Lanward to use the land for the highest and best use. That initial contract contemplated that the uses could be modified at any time by mutual agreement. The amendments to the contract did not restrict the number of hotels that could be placed on the parcels.

The trial court's fact finding relating to Article 9.19 of the Marriott/City Lease was that Lanward (predecessor of Azar) was specifically excepted from the exclusive ho-

tel rights provision and that the limitation applied to any other lessee except Lanward.

The Lanward/City Contract of April 11, 1978, was prior in time and right to the Marriott/City Lease of October 17, 1980. In its only contractual arrangement with Azar, the assignment of Parcel two on August 12, 1980, Marriott did not undertake to place any restriction on Lanward/Azar relative to Parcels one and three. Marriott now attempts to assert a contract, to which neither Lanward nor Azar were parties, to abrogate the earlier rights established by the Lanward/City contract. The trial court expressly found that Marriott was aware of the earlier Lanward/City Contract at the time of the assignment of August 12, 1980.

The trial court had before it all of the documents previously mentioned and those referred to in its findings of fact. Based on those findings, the trial court arrived at the conclusion complained of. We likewise have examined those documents and so much of the statement of facts as was considered by the trial court and believe that the trial court's findings of fact are borne out by the evidence and support the conclusion. Point one is overruled.

■ Although initially agreeing that there is no ambiguity, Appellant's point two alternatively urges ambiguity in the exclusive hotel provision. We find no merit in this contention. Where no ambiguity exists, parol evidence is not admissible to create ambiguity in the contract. Ambiguity does not appear until the application of pertinent rules of interpretation to the fact of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning. *Eggert v. American Standard Life Insurance Company*, 404 S.W.2d 99 (Tex.Civ.App.—Corpus Christi 1966, no writ); citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951). To be ambiguous the meaning of a contract must be "uncertain and doubtful or ... [be] susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). A contract is not ambiguous until all rules of

interpretation have been utilized and the meaning of the contract is still "generally uncertain." *Universal CIT Corporation v. Daniel, supra.*

■ The Appellant asserts that the meaning of the contract is "generally uncertain" because Article 9.19 gives Marriott exclusive rights and grants Lanward an exception to these rights which is determinable; and that the extent of the exception is ambiguous since it is unknown if its terms were frozen at the effective date or they could be changed again. The record as a whole is to be scrutinized in determining if this ambiguity exists. *Henry v. Powers*, 447 S.W.2d 738, 742 (Tex.Civ.App. —Houston [1st Dist.] 1969, no writ). In looking at all the agreements and the surrounding circumstances, in light of the rules of construction, the provisions of Article 9.19 can be reconciled without looking to parol evidence. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515, 518 (Tex.1968). The trial court did not err in refusing to consider parol evidence. We concur with the trial court that the City gave Marriott an exclusive, subject and necessarily subject, to the pre-existing rights of Lanward under the contract of April 11, 1978. Point of Error No. Two is overruled.

In its third point of error Appellant asserts that the trial court's conclusion that Azar is entitled to construct a hotel is not supported by the evidence; that since the record does not show the required prior written consent to the assignments from Lanward to Lanward Development to Azar the validity of these assignments is questionable; that this caused the court to err in its holding that an assignment had occurred between Lanward and Azar.

■ The Appellee responds that because in Finding of Fact Eight, Conclusion of Law Two and inferentially throughout the rest of the findings the trial court stated an assignment had occurred there is some evidence of a valid assignment thus the judgment should be upheld. The Appellee also contends that consent is inferen-

tially shown by the City entering into the lease with Azar and that the City consented to the assignment by a resolution and consent dated May 11, 1982. The City asserts that in its answer it acknowledged the assignments thus consent is explicitly shown. The City alleges that it can be inferred from its February 7, 1984, resolution granting Azar permission to construct a hotel that the City consented to the assignment. We need not consider Appellee's request that we take judicial notice in support of its position. We believe that the provision requiring prior written consent was waived by the City and Azar. In determining if waiver has occurred the court must look to the acts, words or conduct of the parties and the intention must be "unequivocably manifested" that the right will no longer be asserted. *King v. Ladd,* 624 S.W.2d 195, 196 (Tex.Civ.App.—El Paso 1981, no writ; *Stowers v. Harper,* 376 S.W.2d 34 (Tex.Civ. App.—Tyler 1964, writ ref'd n.r.e.); *Jordan Drilling Company v. Starr,* 232 S.W.2d 149, 159 (Tex.Civ.App.—El Paso 1949, writ ref'd n.r.e.). There is ample evidence to show that the City and Azar waived the requirement of prior written consent to assignments and amendments under the April 11, 1978 contract. Furthermore, Marriott's point is directed at the court's conclusion. The conclusion is based on the court's findings of fact. Findings of fact not challenged by points of error are binding upon this Court. *Aldrich v. State ex rel. Cox, supra.* Point of Error No. Three is overruled.

We affirm the judgment of the trial court.