Marcus Glen SEBESTA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00140–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1990.

Douglas M. O'Brien, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Linda A. West, Janie A. Willis, Asst. Dist. Attys., Harris County, for appellee.

Before WARREN, DUGGAN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

The trial court convicted appellant of delivery of a controlled substance, namely, cocaine, and assessed punishment at five years confinement, probated, and a fine of $5,000.00.

On October 29, 1987, the trial judge conducted a pre-trial hearing on appellant's motion to dismiss based on entrapment, and the trial judge said he would rule on the matter in "about a week." On November 11, 1988, the court heard two additional witnesses; on November 14, 1988, the court denied appellant's motion to dismiss. On February 3, 1989, appellant waived his right to a jury trial, signed a stipulation of evidence, and pled not guilty. After hearing further testimony from one witness, the court found appellant guilty.

In his sole point of error, appellant contends that the trial court erred in denying appellant's motion to dismiss based on the defense of entrapment.

Section 8.06 of the Texas Penal Code provides:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

Tex. Penal Code Ann. § 8.06(a) and (b) (Vernon 1974).

At the hearing on appellant's motion to dismiss, John Pierce testified that he worked a deal with Harris County Constable officers in precinct 4 that, if he could deliver some drug arrests, the marihuana case pending against him would be dismissed. Precinct 4 officers introduced him to Lt. Correll of the Tomball Police Department. Lt. Correll introduced Pierce to John Stamper, a detective with the Harris County Sheriff's Department. The State stipulated in the trial court that Pierce was acting as an agent of law enforcement in this case. Pierce testified the officers told him appellant was "a hot person in Tomball," someone known for selling drugs,

and they wanted to get appellant. Pierce said that pursuant to his "contract" with the law enforcement officials, he "tried to set up this deal," and the fact that appellant had been an acquaintance of his for four years influenced him in trying to get appellant to do a narcotics deal with him. Pierce agreed that he went hard after appellant because appellant was a specific target, and Pierce felt he had to "deliver" him. Pierce told the police the name of appellant's drug source. The day after Pierce met Lt. Correll, Pierce called appellant and asked if appellant "could line something up" for a buyer, knowing that appellant could make a delivery. Pierce testified that he called appellant "on and off, not every day," for between one and two weeks before April 3, 1987. At another point, Pierce testified that he called appellant every day for two weeks and imposed on his friendship. He estimated the total number of telephone conversations with appellant at 12, including three calls on April 3 to get "everything set up." At times, appellant told Pierce that his sources were out of pocket, and that Pierce would have to wait until appellant could reach them. However, appellant encouraged Pierce to keep checking with him, and said the deal would be made; it was just a matter of time.

Detective Stamper testified that, at approximately 7:00 p.m. on April 3, he met with Pierce, who was to introduce him to appellant as a buyer for cocaine and marihuana. They went to appellant's residence, and Pierce went inside alone. After a couple of minutes, Pierce came back out, got Stamper, and introduced appellant to Stamper. Appellant pointed to a ziploc bag containing a green leafy substance on the coffee table. Stamper also could see the corner of a plastic bag that contained a white substance. Appellant invited Stamper to "go ahead and check it out." Stamper determined that the bags contained marihuana and cocaine. Stamper asked appellant what he wanted for the drugs. Appellant responded that he wanted $300 for the "eightball," and $250 for the marihuana. Stamper testified that an "eightball" was one-eighth of an ounce, or three and one-

half grams, of cocaine. Stamper attempted to hand appellant the cash, but appellant said to put it on the table. When appellant picked up the money, Stamper picked up the drugs. In accordance with Stamper's instructions, Pierce left the residence before the exchange took place. Stamper asked appellant if they could do business later, and appellant said yes. Stamper walked out of the residence, and gave the signal for surveillance officers to arrest appellant.

Appellant denied that Pierce left before Stamper, and denied he told Stamper they could do business again. Appellant testified that he met John Pierce through Troy Bussell when appellant was in high school, and that he "got to know him pretty well." Appellant said Pierce was a good friend of his. Appellant said he told Pierce that he did not want to deliver the drugs, but he would "see if [he] could get him some" because he did not want to be rude. Appellant testified that he finally decided to go ahead and make the delivery because he was tired of Pierce's calls. Appellant said, "I knew him pretty good. I just wanted to get him out of my hair." Appellant agreed that he would not have done it had it not been for his good friendship with Pierce.

Joanna Hughes, appellant's girlfriend, testified that Pierce telephoned appellant's residence numerous times, about 10 calls a day. Appellant told her that he had known Pierce for a long time, that they were good friends, and that he really didn't want to deliver drugs, but because they were good friends he felt he should.

Troy Bussell testified that he introduced Pierce to appellant, and the three of them went out about twice a week. Bussell said appellant and Pierce were not the "best of buddies," but they had known each other by name for two years and were "pretty good friends." Bussell had no personal knowledge of the conversations between appellant and Pierce regarding the drug delivery.

An accused is entitled to a pre-trial determination of an entrapment claim pursuant to Tex.Code Crim.P.Ann. art. 28.-

01, § 1(9) (Vernon 1989). As with all statutory defenses, the issue of entrapment is raised when evidence is admitted supporting the defense, and it then becomes the burden of the prosecutor to disprove the defense beyond a reasonable doubt. Tex. Penal Code Ann. § 2.03(c) and (d) (Vernon 1974). At a pretrial hearing, the defendant has the burden of producing evidence to raise the entrapment defense, and the prosecution then has the final burden of persuasion to disprove it beyond a reasonable doubt. *Bush v. State,* 611 S.W.2d 428, 430 (Tex.Crim.App. [Panel Op.] 1980); *Cardona v. State,* 768 S.W.2d 823, 825 (Tex.App. —Houston [14th Dist] 1989, no pet.). Where there is conflicting evidence on the issue of entrapment, the trial court does not err in overruling a motion to dismiss. *See Cook v. State,* 646 S.W.2d 952 (Tex. Crim.App.1983). The trial court, as trier of fact, is authorized to weigh the conflicting evidence and draw a conclusion as to whether entrapment has occurred. *Soto v. State,* 681 S.W.2d 602, 604 (Tex.Crim.App. 1984).

■ The entrapment defense is available when the criminal design originates in the mind of government officials or their agents, and they induce a defendant to commit a crime that the defendant would not otherwise commit. *Richardson v. State,* 622 S.W.2d 852, 854 (Tex.Crim.App. [Panel Op.] 1981). The issue is whether appellant was induced to engage in the alleged penal conduct through persuasion or other means likely to cause persons to commit the offenses, or merely was afforded an opportunity to commit them. *Rodriguez v. State,* 662 S.W.2d 352, 355 (Tex. Crim.App.1984). This is purely an objective test, and the trier of fact's vision should focus solely upon the State's actions.

Appellant relies on language in *Ramos v. State,* 632 S.W.2d 688, 691 (Tex.App.— Amarillo 1982, no pet.). There, the Court observed that in enacting section 8.06, the legislature established an objective standard to control police conduct which manufactures crime. The Court stated:

Under the objective standard, prohibited police conduct usually includes, but is not limited to, matters such as extreme pleas of desperate illness in drug cases, appeals based primarily on sympathy, pity, or *close personal friendship*, offers of inordinate sums of money, and other methods of persuasion which are likely to cause the otherwise unwilling person— rather than the ready, willing and anxious person—to commit an offense.

(Emphasis added.)

■ Appellant maintains that he delivered drugs to get rid of Pierce, who hounded him with telephone calls. Annoying telephone calls are not a sufficient inducement to cause a person to commit an offense if the person is not already so disposed. *See England v. State,* 729 S.W.2d 388, 392 (Tex.App.—Fort Worth 1987, pet. ref'd); *Craver v. State,* 628 S.W.2d 155, 157–58 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

■ Appellant argues that Pierce appealed to their close personal friendship to induce appellant to deliver drugs. The closeness of the friendship between appellant and Pierce was contested. Pierce testified that he and appellant were merely acquaintances, and Bussell stated that appellant and Pierce were not the "best of buddies." We find that a rational trier of fact could conclude beyond a reasonable doubt, under the evidence, that Pierce and appellant were not so close that an appeal to their friendship would likely cause an otherwise unwilling person to deliver drugs.

We overrule appellant's sole point of error.

The judgment is affirmed.