Albert "Indio" Hernandez
**TORRES, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 04–97–00977–CR — 04–97–00979–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 14, 1998.

Noel H. Reese, Gonzales, for Appellant.

Lyn Ellison, District Attorney, 81st Juducual District, Carrie Moy Majors, Assistant District Attorney, Jourdanton, for Appellee.

Before LÓPEZ and GREEN, JJ., and DUNCAN, J. (concurring in the judgment only).

## OPINION

LÓPEZ, Justice.

This appeal arises from the trial court's denial of appellant's motion to dismiss on the grounds of entrapment. On December 1, 1997, appellant pled guilty to three indictments for the delivery of a controlled substance pursuant to a plea agreement. In exchange, he received ten years deferred adjudication probation on each charge. Appellant, Albert "Indio" Hernandez Torres, raises two issues on appeal. Torres claims that the state lacked sufficient evidence to disprove entrapment beyond a reasonable doubt. We agree with Torres's first issue, we do not address the second issue raised by Torres, and reverse and render a judgment of dismissal on all charges.

### STATEMENT OF FACTS

In 1996, Officer John Dabbs was hired as an undercover narcotics officer for the 81st Judicial District Narcotics Task Force in Karnes County, Texas. In September 1996, Dabbs sought the assistance of Torres to gain access to an alleged drug dealer living in

Kenedy, Texas. Dabbs sought Torres's help because he knew Torres was acquainted with the dealer. According to Dabbs's testimony at trial, he sought Torres's assistance in acquiring drugs on numerous occasions. At first, Torres voiced his reluctance about getting in trouble with the law. His reluctance gave way when he was told by Dabbs that he would not be doing anything wrong.

Three deliveries of cocaine were made by Torres for Dabbs. Some of these deliveries were made in the company of the officer. Torres was paid ten dollars for the last delivery. In addition, Torres received a small amount of cocaine, a "bump," after one delivery.[1] At trial, Dabbs admitted to using their friendship as a means to convince Torres to help him. According to the record, both men had known each other for approximately twelve years. They had been introduced by Torres's employer and Dabbs's best friend, Allen Brown. Over those years, Torres and Dabbs would gather at Brown's Automotive Shop in Kenedy after work, and according to their testimonies, both men had worked together at the shop when Dabbs was between jobs.

### BURDEN AND STANDARD OF REVIEW

Under Texas law, entrapment is a defense to prosecution. TEX. PENAL CODE ANN. § 8.06(a) (Vernon 1994).[2] Procedurally, an accused is entitled to a pre-trial determination of a claim of entrapment. TEX.CODE CRIM. PROC. ANN. art. 28.01(Vernon 1989). When making its determination, the trial court must follow the provisions as outlined under TEX. PENAL CODE ANN. § 2.03 (Vernon 1994); *Taylor v. State*, 886 S.W.2d 262, 265 (Tex.Crim.App.1994).[3] At the pre-trial hearing, the accused has the burden of producing evidence raising the defense. After the ac-

cused has met this initial burden, the burden of persuasion falls on the State to disprove entrapment beyond a reasonable doubt. *England v. State*, 887 S.W.2d 902, 908 (Tex. Crim.App.1994); *Taylor*, 886 S.W.2d at 265; *Sebesta v. State*, 783 S.W.2d 811, 814 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).

Where conflicting evidence exists on the issue of entrapment, the trial court does not err in overruling a motion to dismiss. *Cook v. State*, 646 S.W.2d 952, 952 (Tex.Crim.App.1983). The trial court, as the trier of fact, must weigh the evidence and determine whether the accused was entrapped as a matter of law. *Soto v. State*, 681 S.W.2d 602, 604 (Tex.Crim.App.1984); *Bush v. State*, 611 S.W.2d 428, 430–31 (Tex. Crim.App.1980). On review, the issue of entrapment centers on the legal sufficiency of the evidence. The sufficiency of the evidence is determined in the light most favorable to the prosecution whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also could have found against the appellant on the issue of a defense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991)).

### ANALYSIS AND DISCUSSION

Entrapment exists if the criminal intent originates in the mind of the police agent and the agent then induces the accused to commit the offense. *Williams v. State*, 848 S.W.2d 777, 780 (Tex.App.—Houston [14th Dist.] 1993, no pet.) Entrapment does not exist where the police agent merely furnished the opportunity for the commission of

---

1. The State would characterize the ten dollar payment and "bump" as compensation for agreeing to traffic in narcotics. However, the record does not establish that Torres asked for the money and the "bump" as compensation for the deliveries. Torres testified that he tasted some cocaine after it was given to him by Officer Dabbs and then threw it away.

2. Section 8.06(a) specifically states:
   It is a defense to prosecution that the actor engaged in the conduct charged because he

was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to the commit offense. Conduct merely affording an opportunity to commit an offense does not constitute entrapment.

3. The Penal Code provides that the "issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." TEX. PENAL CODE ANN. § 2.03(c) (Vernon 1994).

the offense. TEX. PENAL CODE ANN. § 8.06(a) (Vernon 1994); *Rodriguez v. State,* 662 S.W.2d 352, 355 (Tex.Crim.App.1984). The following exchange occurred during Dabbs's testimony:

> Q. [Defense] And your use of persuasion resulted in what would have been in other words a[sic] nò criminal intent whatsoever?
>
> A. [Dabbs] Yes, sir.
>
> Q. Criminal intent originated in your mind?
>
> A. I was the one [who] originated the action.
>
> Q. You don't believe he [Torres] ever— ever had the criminal intent to sell drugs?
>
> A. Never came across that. He wasn't selling before I confronted him. He never approached me and I still hear things different people around the county, but they still don't know who I am yet, and I still haven't heard of anything of him ever having dealt drugs before.

We find that by admitting the *actions originated* with him, Dabbs testified that the intent for the deliveries originated with him and not Torres. The State's assertion that Dabbs's testimony is not indicative of criminal intent is merely an argument of semantics. Furthermore, we look at how Torres responded to Dabbs's request for assistance.

> Q. [Defense] And, in fact you [sort] of thought you were helping get drugs off— Did you think that you were helping get drugs off the street by helping John Dabbs?
>
> A. [Torres] Yes. Yeah. Because I knew he was a police officer....

Ultimately, Torres agreed to undertake deliveries of cocaine for Dabbs after he was assured the he was not doing anything wrong.[4] When examining the testimony in the light most favorable to the State, the trier of fact could not have found the criminal intent to deliver cocaine originated with Torres beyond a reasonable doubt.

■ The test for entrapment under Texas Penal Code section 8.06 is a two-prong test comprised of subjective and objective elements. *England v. State,* 887 S.W.2d 902, 913 (Tex.Crim.App.1994).[5] First, the accused must show that they were in fact induced by law enforcement to engage in the illegal conduct. *Id.* This first prong is a subjective test. The accused must show that *because of* police persuasion he was induced to act. *Id.* Second, the accused must show that the conduct that induced him to act would have induced an ordinary person. *Id.* This second prong is an objective test.

As stated above, Dabbs approached Torres on numerous occasions before he finally agreed. Furthermore, the record reflects that Torres did not engage in drug deliveries prior to this case or even had a prior criminal history. *See England,* 887 S.W.2d 902, 909 (Tex.Crim.App.1994) (holding that evidence of prior crimes, wrongs, or acts are admissible to show the likelihood of inducement ).[6] According to Dabbs, Torres was not a known drug dealer. The deliveries were being used to build a case against the targeted drug dealer not Torres.[7] Finally, we reiterate this important fact; Torres became a willing participant when Dabbs assured him he wouldn't be doing anything wrong. Were it not for these facts, Torres would not have agreed to participate in the deliveries. Therefore, we find that he was in fact induced.

---

4. The State argues that merely assuring the accused that there will not be any problems does not amount to an inducement. The State cites *Lopez v. State,* 824 S.W.2d 298 (Tex.App.—Houston [1st Dist.] 1992, no pet.) in support of its argument. There the court found no inducement when the accused was assured there would not be any problems. *Id.* at 303. *Lopez* is factually distinguishable from the present case. In *Lopez,* there was no evidence to suggest that the accused and the law enforcement agent maintained a close friendship.

5. Prior case law treating § 8.06 as purely objective test was not overruled by *England.* The court merely added the subjective component to the test. *England v. State,* 887 S.W.2d 902, 913 n. 10 (Tex.Crim.App.1994).

6. Torres did admit to using marijuana in the past. However, we find that the prior use of marijuana does not negate inducement especially when weighed with other factors such as the lack of a criminal record.

7. Testimony during the hearing revealed that Dabbs had a pattern of not following procedure in documenting cases.

In determining whether the inducement would have induced a law abiding citizen to act, the Court must focus on the State's actions. *Campbell v. State*, 832 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1992, pet. ref'd ). As the Court stated in *Sebesta:*

> Under the objective standard, prohibited police conduct usually includes, but is not limited to, matters such as extreme pleas of desperate illness in drug cases, appeals based primarily on sympathy, pity or *close personal friendship*, offers of inordinate sums of money, and other methods of persuasion which are likely to cause the otherwise unwilling person—rather than the ready, willing and anxious person—to commit an offense.

*Sebesta*, 783 S.W.2d at 814 (quoting *Ramos v. State*, 632 S.W.2d 688, 691 (Tex.App.—Amarillo 1982, no pet.)) (emphasis added).

Unlike the undercover officers in *Ramos,* Dabbs approached Torres on numerous occasions before he gave in. *Ramos,* 632 S.W.2d at 691 (Tex.App.—Amarillo 1982, no pet.) (stating a one time request for marijuana did not constitute inducement). In addition, the request made by Dabbs was specific. He requested that Torres go on his behalf and that he obtain the cocaine for him. *See Gonzales v. State* 697 S.W.2d 50 (Tex.App.—Beaumont 1985, pet. ref'd) (holding that undercover officer's general request for "anything" was not an inducement); *Ransom v. State*, 630 S.W.2d 904 (Tex.App.—Amarillo 1982, no pet.) (holding that officer requesting a general desire for sex was not an inducement). Moreover, Dabbs testified that he relied on their friendship to persuade Torres and used the existence of their friendship to convince Torres.

The existence of a friendship is significant. At the time of the deliveries, the men had known each other for approximately twelve years. *See Sebesta,* 783 S.W.2d at 814 (holding that a close friendship did not exist when agent and defendant had only known each other for two years and knew each other by name only). The State argues that Dabbs knew Torres only by his nickname, "Indio," and never even knew Torres's wife and family. According to the record, Dabbs initially requested that Torres obtain some marijuana for him. The purpose of asking for marijuana was to gain Torres's confidence before asking him for cocaine. The State argues that the need to gain Torres's confidence is indicative of the fact that a close friendship did not exist because of a lack of trust. However, by Dabbs's own admission, he needed to gain Torres's confidence because the two men had never discussed drugs or the use of drugs.

Contrary to the State's assertion, the record clearly reflects that the men had met on numerous occasions through the years. During these times they would discuss life and work as most friends do. In addition, they had worked closely together at the automotive shop owned by Allen. Finally, both men testified that they considered the other a friend. Given these facts it appears that a close friendship existed. We find that the existence of a close friendship coupled with Dabbs's actions in approaching Torres would have induced a law-abiding citizen to participate in the deliveries.

### CONCLUSION

Having found that Torres lacked the necessary criminal intent and that inducement was met under the England test, we find that sufficient evidence existed to support a defense of entrapment. We cannot sustain, based on these facts, that a rational trier of fact could have found the essential elements of the offense and against Torres's defense beyond a reasonable doubt. For the reasons stated above, we reverse the judgment of the trial court and order dismissal of all charges.