In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00163-CR


______________________________




DANIEL GARZA, III, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. 002-CR-00146




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On the tape recording of the May 6, 2002, conversation between Daniel Garza, III, and
undercover officer Terry Bee, Garza asks Bee to kill Bob Pyaett, a local businessman, and Val
Varley, the District Attorney of Red River County, Texas. Based on this conversation, Garza was 
convicted for solicitation of murder, and a jury assessed his punishment at five years' imprisonment
and an $8,000.00 fine, recommending that Garza be placed on community supervision. Garza
contends on appeal that the trial court erred by refusing to dismiss the indictment in the face of what
Garza contends is entrapment by law enforcement officials.

 The evidence shows that local law enforcement officials listened in on a telephone
conversation between Garza and his mother, Rosa, who was in jail at the time. Garza told Rosa in
that conversation that his grandmother had told him about an uncle in Houston with Mafia
connections who could come "help us on Bob . . . and Val Varley," and that "nobody would ever find
out because . . . the Mafia . . . get away with anything they do." The officials thought Garza and
Rosa were talking about getting someone from Houston to kill Pyaett and Varley. The local officials
recruited Bee to talk to Garza and give him the opportunity, if he had made that telephone call, to
hire Bee to kill Pyaett and Varley. 

 The background situation is that Rosa had worked in Pyeatt's convenience store for eighteen
years before Pyeatt fired her, alleging that she had stolen over $40,000.00 from the store. She was
evidently convicted on a guilty plea and placed on community supervision. Then Garza and Rosa,
who were operating a tobacco store, imported cigarettes from Oklahoma for Texas resale, evidently
without paying Texas taxes. Varley was taking steps to revoke her community supervision at the
time of the conversation.

Analysis

 Section 8.06 of the Texas Penal Code provides the definition and elements of entrapment. 
It reads:

 (a) It is a defense to prosecution that the actor engaged in the conduct charged
because he was induced to do so by a law enforcement agent using persuasion or
other means likely to cause persons to commit the offense. Conduct merely affording
a person an opportunity to commit an offense does not constitute entrapment. 

Tex. Pen. Code Ann. § 8.06 (Vernon 2003).

 Procedurally, an accused is entitled to a pretrial determination of a claim of entrapment. Tex.
Code Crim. Proc. Ann. art. 28.01, § 1(9) (Vernon 1989). When making its determination, the trial
court must follow the provisions of Section 2.03 of the Texas Penal Code. Tex. Pen. Code Ann.
§ 2.03 (Vernon 2003); see Taylor v. State, 886 S.W.2d 262, 265 (Tex. Crim. App. 1994). At the
pretrial hearing, the defendant has the burden of producing evidence raising the defense, after which
the burden of persuasion falls on the State to disprove entrapment beyond a reasonable doubt. Tex.
Pen. Code Ann. § 2.03(d); England v. State, 887 S.W.2d 902, 908-09 (Tex. Crim. App. 1994);
Taylor, 886 S.W.2d at 265.

 When entrapment is in issue, the trial court, as the trier of fact, must weigh the evidence and
determine whether the defendant was entrapped. Soto v. State, 681 S.W.2d 602, 604 (Tex. Crim.
App. 1984); Bush v. State, 611 S.W.2d 428, 431 (Tex. Crim. App. 1980). When the evidence on
entrapment is in conflict, the trial court does not err in overruling a motion to dismiss. Cook v. State,
646 S.W.2d 952 (Tex. Crim. App. 1983). Therefore, on appeal, we look to see if the evidence was
legally sufficient to support the trial court's determination. Flores v. State, 84 S.W.3d 675, 681 (Tex.
App.-Houston [1st Dist.] 2002, pet. ref'd); Torres v. State, 980 S.W.2d 873, 875 (Tex. App.-San
Antonio 1998, no pet.).

 In this case, there is no evidence that the police persuaded Garza to solicit murder. The
evidence shows that Bee, the undercover officer, approached Garza, allowed Garza to conclude Bee
had come from Houston at a family request, and asked Garza to specify what he wanted from Bee. 
The conversation provides evidence that Garza sought to have Varley and Pyeatt killed.

 Entrapment exists if the criminal intent originates in the mind of the police agent and the
agent then induces the accused to commit the offense. Torres, 980 S.W.2d at 875. Entrapment does
not exist where the police agent merely furnishes the opportunity for the commission of the offense. 
Rodriguez v. State, 662 S.W.2d 352, 355 (Tex. Crim. App. 1984); Barnes v. State, 70 S.W.3d 294,
304 (Tex. App.-Fort Worth 2002, pet. ref'd); Torres, 980 S.W.2d at 875-76.

 In this case, there is evidence that Bee merely furnished an opportunity for Garza to explain
that he wanted to have two individuals killed. The fact that they discussed the transaction in
circuitous terms does not show that Garza was not seeking the act, but instead that he was at least
to some degree circumspect in asking blatantly to have a person killed. There is some evidence to
support the court's ruling. The point of error is therefore overruled.

 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 26, 2003

Date Decided: September 30, 2003


Do Not Publish



hat police found any
firearm in James' possession following his death. Brian himself even admitted at trial that James did
not have a gun or other weapon at the time of the shooting. Accordingly, the evidence in this case
would not support a claim that Brian used deadly force in self-defense. See Tex. Penal Code Ann.
§ 9.31(a) (Vernon 2003). Brian also testified he had not felt the need to use deadly force in response
to either having a hammer thrown at him or a shovel waived menacingly in his direction. See id.
(actor must reasonably believe force is "immediately necessary").

 Brian testified he shot James because he could not retreat further and because he feared
James would take the gun away and use it. Brian also told the trial court that he fired the third (and
fatal) shot as he tripped and fell backward, with James still advancing aggressively. Such testimony
suggests the bullet would have entered James' shoulder from an angle below the point of entry and
then traveled upward through the shoulder. To the contrary, the autopsy report indicated the fatal
wound was fired with the gun located above, with the bullet then traveling in a downward direction
into James' shoulder. 

 Angela had earlier testified that Brian could have previously left the premises and walked to
his house (which was next door) after James had thrown the hammer. According to Angela's
continued testimony, she told Brian to leave the area shortly after the initial verbal spat between
James and Brian, but Brian had failed to heed Angela's advice. 

 This evidence suggests that the murder was not premeditated, but was instead the product
of impulsive conduct. But the contradictory evidence presented the trial court with a factual issue
regarding whether the killing was done under "sudden passion" prompted by "adequate cause." In
this case, the trial court answered that question in the negative.

 The trial court, acting as the fact-finder, was in the best position to judge witness credibility. 
This fact is key, because Brian's sudden-passion claim rises or falls on whether the trial court
believed critical testimony supporting that claim. First, the trial court had before it the results of the
autopsy report, which clearly contradicted that part of Brian's testimony in which he claimed he shot
from a position below James, upward into James' chest. That conflict could have undoubtedly
diminished the trial court's belief of Brian's other testimony. Second, the trial court could have given
no credence to the accused's testimony that he believed he was unable to retreat further and that
James would have taken the gun away and used it against the accused. Third, the trial court heard
Angela's testimony that Brian had been told to leave the area, had been given an opportunity to do
so, and had failed to heed that warning. This testimony suggests Brian had been given an
opportunity to pause and reflect on how to alleviate the tense situation by leaving the area, but he
instead chose to remain and continue the confrontation. Fourth, the evidence is unequivocal that
James did not have a firearm and that it was Brian who introduced this deadly weapon into the
fracas. The trial court could have reasonably concluded that had Brian not been illegally carrying
the weapon, (6) that had Brian left James' property in accordance with the instructions of James' wife,
or that had Brian not himself drawn the weapon from its hidden location in his pants and thereby
introduced the gun into the altercation, then James might not have been killed. Fifth, the trial court
could also have reasonably concluded, based on its evaluation of witness credibility and resolution
of evidentiary conflicts, that James' mere act of angrily charging toward Brian--at a time when all
witnesses agreed that James was without any type of weapon--did not provide Brian with adequate
cause to use the gun. And, finally, the trial court could have reasonably concluded Brian, amidst the
chaos of the shooting, did have a moment to coolly deliberate on his conduct and its consequences
because Brian was able to articulate at trial the distinct rationalization that went through his mind
before firing the gun a third time, testimony that at least suggested Brian was capable of engaging
in a deliberate assessment of his conduct just before firing the gun a third time. In sum, from the
evidence presented, the trial court could have reasonably concluded that James' act of merely
advancing angrily toward Brian was insufficient to justify the degree of "terror," "rage," or
"resentment" required to justify Brian's response of deadly force. 

 This result is reasonable in light of Brian's own testimony that James' earlier threats with the
shovel and hammer had evoked no feeling of need to then respond with deadly force. It logically
follows that a "lesser" threat from James (via one which did not employ the use of a weapon such
as a shovel or hammer) would not justify an "escalated" response from Brian (by using a deadly
weapon) when those earlier threats had failed to evoke a similarly strong emotion from the accused.

 Under this state of the evidence, the trial court's determination that Brian did not act with
sudden passion provoked by adequate cause was supported by factually sufficient evidence, and the
trial court's judgment is not clearly wrong or manifestly unjust. Cf. Johnson v. State, 815 S.W.2d
707, 711 (Tex. Crim. App. 1991) (affirming murder conviction; fact-finder could reject sudden
passion claim if it found no provocative conduct, no adequate case, or that defendant acted
deliberately rather than in moment "incapable of cool reflection"); Garza v. State, 878 S.W.2d 213,
216-19 (Tex. App.--Corpus Christi 1994, pet. ref'd) (holding there was sufficient evidence from
which fact-finder could have concluded murder was not product of sudden passion arising out of
adequate provocation); Scott, 814 S.W.2d at 519-20 (conducting legal sufficiency review of jury's 




finding that appellant's homicidal conduct was not product of "sudden passion"; conviction
affirmed). Accordingly, we overrule Brian's sole point of error and affirm the trial court's judgment.

 





 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: January 26, 2007


Do Not Publish
1. There are several witnesses in this case that share last names. To avoid confusion, we will
refer to the appellant and all non-police witnesses by their first names.
2. Unbeknownst to James, it was his wife who had given away his dog.
3. Brian pled "guilty" to killing James by shooting him with a firearm. See Tex. Penal Code
Ann. § 19.02(a) (Vernon 2003). The issue of punishment was submitted to the trial court, and Brian
argued he killed James while acting under sudden passion--an affirmative defense that, if proven
by a preponderance of the evidence, lessens the applicable punishment range to that provided for a
second-degree felony. See Tex. Penal Code Ann. § 19.02(d) (Vernon 2003). The trial court
disagreed with Brian's sudden passion argument and sentenced him to twenty-five years'
imprisonment, which is within the range provided for a first-degree felony and outside the range
provided for a second-degree felony. Compare Tex. Penal Code Ann. § 12.32(a) (Vernon 2003)
(first-degree punishable by life or not less than five nor more than ninety-nine years' imprisonment)
with Tex. Penal Code Ann. § 12.33(a) (Vernon 2003) (second-degree punishable by not less than
two nor more than twenty years' imprisonment). Brian now appeals, contending the evidence is
factually insufficient to support the trial court's conclusion that he did not act with sudden passion. 
4. "A factual-sufficiency review is 'barely distinguishable' from a Jackson v. Virginia legal
sufficiency review." Marshall v. State, No. AP-75,048, 2006 Tex. Crim. App. LEXIS 2444, at *14
(Tex. Crim. App. Dec. 20, 2006).
5. Brian had already fled the scene after the shooting when Vaughn arrived. Vaughn did not
interview Brian until a later point in time. 
6. Brian was a convicted felon who had been released from prison less than two months before
he shot James. Generally, a convicted felon may not possess a firearm before the fifth anniversary
of his or her release from confinement or community supervision for the felony offense. See Tex.
Penal Code Ann. § 46.04 (Vernon Supp. 2006). For more information regarding his appeal of the
conviction   for   possessing   the   firearm,   see   our   opinion   in   Patrick   v.   State,   cause
number 06-06-00079-CR.