NO.
12-05-00207-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

TAVARES
JEROME AKINS,          §          APPEAL FROM THE 241ST

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION








            Appellant
Tavares Jerome Akins was convicted for possession with intent to deliver a
controlled substance and sentenced to twelve years of imprisonment.  In his sole issue, Appellant challenges the
legal sufficiency of the trial court’s order denying Appellant’s motion to
dismiss.  We affirm.

 

Background

            Appellant was indicted for
possession with intent to deliver a controlled substance, a first degree
felony.[1]  He moved for a pretrial hearing on entrapment
as a defense.  In his motion, Appellant
requested that the charge be dismissed. 
The trial court granted a pretrial hearing on the entrapment issue.  Two hearings were held on October 15 and
October 21, 2004 to consider the motion. 








            At the first hearing, Special Agent
Robert Zafra, a criminal investigator for the Drug Enforcement Agency,
testified that he met with a confidential source (CS) at a Western Union office
in Dallas, Texas on April 1, 2004.  While
he was talking on his cell phone, he saw the CS approach Appellant outside the
Western Union office.  Appellant and the
CS talked as they stood by Appellant’s vehicle. 
When Zafra approached them, the CS explained in Spanish to Zafra that
Appellant was looking for a source for drugs. 
The CS introduced Zafra as his cousin from Mexico, stating that Zafra
could only speak Spanish.  Although
bilingual, Zafra asked the CS in Spanish what Appellant wanted.  Appellant and the CS discussed marijuana and
cocaine and exchanged telephone numbers. 
After receiving several phone calls from Appellant, the CS arranged to
deliver one kilogram of cocaine to Appellant for a price of $16,000.00. 

            Appellant introduced into evidence
three tape recordings of conversations between Appellant and the CS.  After receiving several phone calls from
Appellant, the CS recorded their conversation of April 7, 2004.  The trial court listened to the recording of
that phone conversation.  On the
recording, Appellant said, “I am ugly right now, I need some help.”  The CS reminded  Appellant that Zafra was in Mexico for two
weeks and said that he did not want to “do the deal” until Zafra returned.  Zafra recorded several other conversations
between the CS and Appellant, occurring on April 14 and April 15, 2004.  The trial court listened to these recordings
as well.  On the second tape, recorded on
April 14, the CS told Appellant that he and Zafra would be in Tyler around 7:00
p.m.  Appellant asked about buying
marijuana instead of cocaine as they had previously discussed.  The CS said that he could get Appellant
whatever he wanted, but he thought they had been talking about a “mile” of “snow.”[2]  Appellant then said he might want only “half
a mile.”  The CS said he could do that,
but the price would be $10,000.00 for half. 
Appellant decided he would rather go forward with their original
arrangement – $16,000.00 for one kilogram of cocaine.  The third cassette tape had several
conversations recorded on April 15.  Each
of those conversations concerned logistics such as directions to the hotel
where the parties were meeting, the description of their respective vehicles,
and anticipated arrival times.

            At the second hearing, the CS
testified that he had never met Appellant prior to meeting him at the Western
Union office in Dallas.  While Zafra was
talking on his cell phone, the CS approached Appellant outside the Western
Union office and told him he had a “nice ride.” 
The car had very nice rims, which from the CS’s experience were often
associated with drug dealers.  He

asked Appellant how
much money he would take for his car. 
Appellant responded by asking, “Can you get me some elbows?”  The CS interpreted “elbows” as being blocks
of marijuana weighing one pound.  The CS
responded that he could provide marijuana or cocaine.  When discussing the price for a kilogram of
cocaine, the CS told Appellant that he could get it to him for “16 ” as opposed
to Appellant’s other source who provided it for “17 and a half.”[3]

            At this time, Zafra finished his
phone conversation and approached the CS and Appellant.  It was then that the CS introduced Zafra as
his cousin.  After telling Zafra in
Spanish about the “deal,” the CS acted as if Zafra was not happy with him for
setting the price at $16,000.00.  The
CS  and Appellant exchanged phone
numbers. 

            Appellant phoned the CS between 8:00
p.m. and 9:00 p.m. later that day and asked for a sample of the cocaine.  The CS called Appellant back later that night
and explained he could not  meet him for
a couple of weeks because his “cousin” was going to be out of town until
then.  

            Approximately one week later,
Appellant again phoned the CS, saying “he was hurting, it was urgent, that he
needed some stuff as quick as possible.” 
The CS asked to call Appellant back. 
After installing the recording device to his phone, the CS called
Appellant back and taped the conversation. 
The second tape contained a recording of a conversation that occurred
the day before the “actual deal happened.”

            The CS and Zafra arranged to meet
Appellant the next day, April 15, at a Tyler hotel.  The CS met Appellant in the parking lot.  Appellant gave the CS a bag of money, at
which time they walked into the hotel room where they counted the money.[4]  The CS, Zafra, and Appellant then walked back
to the parking lot to retrieve the drugs. 
It was at this time that the officers arrested Appellant.  In response to questioning by Appellant’s
counsel, the CS denied telling Appellant that his wife was about to give birth
or that he “really needed the deal to go through.”

            At the conclusion of the second
hearing, the trial court denied Appellant’s motion to dismiss.  On February 7, 2005, Appellant entered an
open plea of  “guilty.”  The trial court accepted Appellant’s plea, ordered
a presentence investigation, and reset the case for punishment.  On March 11, 2005, the court held a
punishment hearing and then assessed imprisonment for life.  This appeal followed.

 

Sufficiency of the
Evidence

            In his sole
issue, Appellant contends he established entrapment as a matter of law at
pretrial and the State failed to meet its burden of overcoming the defense;
accordingly, the trial court erred when it did not dismiss the case.  

Standard of Review and Applicable Law

            When asked to
review a pretrial order, we consider only the evidence produced at the hearing
on that motion because the ruling in issue was not based on trial
evidence.  Hardesty v. State,
667 S.W.2d 130, 133 (Tex. Crim. App. 1984). 
When reviewing a trial court’s denial of a pretrial motion asserting
entrapment as a matter of law, the appellate court focuses on the legal
sufficiency of the evidence.  Torres
v. State, 980 S.W.2d 873, 875 (Tex. App.–San Antonio 1998, no
pet.).  We address the legal sufficiency
by viewing the evidence in the light most favorable to the prosecution.  Adelman v. State, 828 S.W.2d
418, 421 (Tex. Crim. App. 1992).  We
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt and could have found against
the appellant on the defense issue beyond a reasonable doubt.  Id. 
This review must take into account that “the trier of fact . . .
not the appellate court . . . was free to accept or reject all or any portion
of any witness’s testimony.”  Id.

            Under Texas
law, entrapment is a defense to prosecution. 
Tex. Pen. Code Ann. § 8.06
(Vernon  2003).  A defendant is entitled to a pretrial
determination of a claim of entrapment.  Tex. Code Crim. Proc. Ann. art. 28.01
(Vernon 1989).  The defendant has the
burden to produce evidence of an inducement that was likely to cause persons
not willing to commit the crime to engage in the charged conduct.  State v. Pena, 824 S.W.2d 223,
224 (Tex. App.–Waco 1992, pet. ref’d). 
If the criminal intent originates in the mind of the agent, and the
agent then induces the accused to commit the offense, entrapment exists.  Torres, 980 S.W.2d at 875.  Entrapment does not exist where the agent
simply furnishes the opportunity for the commission of the crime.  Id.; Reese v. State,
877 S.W.2d 328, 333 (Tex. Crim. App. 1994). 


            The entrapment
test under section 8.06 comprises both subjective and objective elements.  England v. State, 887 S.W.2d
902, 913 (Tex. Crim. App. 1994).  First,
the defendant must show that he was, in fact, induced by law enforcement to
engage in the illegal conduct (subjective test).  Id.  Second, the defendant must show that the
conduct that induced him to act would have induced an ordinary person
(objective test).  Id.  Without evidence of inducement, the issue of
entrapment is not raised.  Pena,
824 S.W.2d at 224.  

            In the
pretrial hearing context, a defendant is entitled to dismissal of the charges
under section 8.06 “only when he can establish entrapment as a matter of law
with conflict-free, uncontradicted, uncontested, or undisputed evidence.”  Hernandez v. State, 161 S.W.3d
491, 499 (Tex. Crim. App. 2005).  If the
facts concerning entrapment are in dispute, there cannot be entrapment as a
matter of law determined at the pretrial stage. 
Id.  The defendant
must establish beyond a reasonable doubt that he was entrapped.  Id.  The State need only to raise a fact issue
that a jury would be required to resolve at the pretrial stage.  Id.  When an entrapment defense is presented in
either the pretrial or trial context, the factfinder is authorized “to weigh
the evidence and draw a conclusion” as to whether the evidence establishes
entrapment as a matter of law.  Id.
at 500.  The trial court does not err in
overruling a motion to dismiss when the trial judge, as the sole trier of fact,
does not believe testimony, even when it is not directly contradicted.  Id. 

Application of Law to Facts

            At the
pretrial evidentiary hearings, the trial court heard testimony that the CS
approached Appellant at a public parking lot and admired Appellant’s car.  Appellant asked the CS about buying drugs,
and the CS told him he could get him marijuana or cocaine.  Appellant phoned the CS several times to set
up the transaction. 

            Appellant
specifically asserts that he was entrapped because the CS pressured him into
the deal by telling him that his pregnant wife was nearly due and that “he
really needed the deal to go through.” 
The second audio cassette tape reveals that the CS told Appellant that
his wife was two months pregnant. 
Appellant mentioned he might want to buy marijuana instead and then that
he might want to buy only half of the amount of cocaine previously
discussed.  Based on Appellant’s reaction
to the proportionately higher price for the smaller amount of cocaine, the CS
told Appellant that his job was to make money, and that if he did not make
money, Zafra would fire him.  

            The testimony
from Zafra and the CS did not provide evidence of inducement.  The CS’s comments concerning his pregnant
wife and his comment that he would be fired if he did not make money cannot be
considered an inducement.  The CS quoted
Appellant a more attractive price than 
Appellant’s other source offered for cocaine – 8.5% less – and arranged
to deliver the cocaine to Tyler.  No
urgent pleas were used to induce Appellant’s actions.  Further, an 8.5% discount cannot be
considered a valuable incentive.  The
testimony fails to show that a person with reasonable resistance would be
induced to commit the crime; instead, it only shows that an opportunity to
commit the offense was given to Appellant. 
Without inducement, entrapment is not raised.  Pena, 824 S.W.2d at 224.  Additionally, the uncontroverted  evidence shows that Appellant broached the
subject of buying drugs to the CS and that he was eager to pursue a “buy.”  Based upon our review of the record and
viewing the evidence in the light most favorable to the prosecution, we
conclude that a rational trier of fact could have found against Appellant on
the entrapment defense.  Appellant’s sole
issue is overruled.

Disposition                                              

            Having
overruled Appellant’s sole issue, the trial court’s judgment is affirmed.

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered June 30, 2006.

Panel consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)











     [1] See Tex.
Health & Safety Code Ann. § 481.112 (Vernon 2003).

 





    
[2] A “mile” is a
kilogram, and “snow” is cocaine.





    
[3] The CS said he
initiated contact with Appellant on his own impulse and denied that Zafra or
any other law officer directed him in that action.  The CS also set the price at $16,000.00
without consulting Zafra.





    
[4] Remnants of
cocaine were also in the bag.